**CHARLES L. FIRESTEIN, P.C.**
Charles L. Firestein, #002986
1300 E. Missouri Ave., Ste D-200
Phoenix, Arizona 85014
[602] 235-9000
Fax (602) 235-9040
charles@firesteinpc.com

Attorney for Movant AMERICAN HONDA FINANCE CORPORATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:<br>**TODD SCOTT PIERSON,**<br>　　Debtor,<br>──────────────────<br>**AMERICAN HONDA FINANCE CORPORATION, its assignees and/or successors in interest,**<br>　　Movant,<br>vs.<br>**TODD SCOTT PIERSON, DEBTOR; RUSSELL BROWN, TRUSTEE,**<br>　　Respondents. | **CHAPTER 13 PROCEEDINGS**<br><br>**CASE NO: 2:09-bk-22447-EWH** |

### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

AMERICAN HONDA FINANCE CORPORATION, its assignees and/or successors in interest (Movant), hereby moves the court for entry of an order granting Movant relief from the Automatic Stay pursuant to U.S.C. §362(a) (1984) to permit Movant to take possession of a motor vehicle in which Movant claims a security interest. The basis of the Movant's Motion is set forth in the Memorandum attached hereto.

RESPECTFULLY SUBMITTED this November 16, 2009.

　　CHARLES L. FIRESTEIN, P.C.

/s/ Charles L. Firestein  #002986
Charles L. Firestein, Esq.
Attorney for Movant

**MEMORANDUM**

**FACTS:** On September 11, 2009, Debtor filed a Petition under Chapter 13 of the Bankruptcy Code. Prior to the filing of the petition, Debtor made, executed and delivered a (Motor Vehicle Lease Agreement and Disclosure or Motor Vehicle Retail Installment Sales Contract and Purchase Money Security Agreement) ("Agreement") to Movant. A copy of the Agreement is attached hereto as **Exhibit "A"** and is incorporated by reference.

The Agreement concerns a 2009 HONDA ACCORD, vehicle ID# 1HGCP26409A068287, ("the vehicle"). Movant is the lessor and Debtor is the lessee under the Agreement. Debtor is in default under the Agreement by failing to pay monthly installments. Debtor is currently delinquent the September 23, 2009 regular monthly installment payment and every payment thereafter, plus accruing attorneys fees and cost.

Moreover, on or about November 12, 2009 Debtor voluntarily surrendered said vehicle to Movant.

Movant has incurred, or may incur, certain costs, including, without limitation attorneys' fees and processing fees, which are authorized in the Agreement.

Pursuant to the Agreement, Movant has a claim for the entire gross payoff balance together with additional payments, late charges, costs and advances incurred with respect to the vehicle.

Movant has performed all obligations required of it under the Agreement and all conditions precedent to the Debtor's performance thereunder have occurred.

Upon information and belief, it is alleged that the Property is not necessary to effectuate reorganization of the Debtor; and that the Debtor is not seeking reorganization; and the Debtor has no reasonable prospect or reorganization.

Upon information and belief, Movant's interest in the vehicle has not been adequately protected, nor has Movant been offered adequate protection.

REQUEST FOR RELIEF:

The Movant requests that the court enter an order relieving it from the Automatic Stay of 11 U.S.C. §362(a) (1984) to allow the Movant to take possession of the subject Vehicle under its Agreement; or, in the alternative, to grant an order providing Movant with adequate protection.

RESPECTFULLY SUBMITTED this November 16, 2009.

**CHARLES L. FIRESTEIN, P.C.**

/s/ Charles L. Firestein  #002986
Charles L. Firestein, Esq.
Attorney for Movant

# HONDA
## Financial Services

**Leadership Leasing**  
**Closed-End Vehicle Lease Agreement**

DEAL 10120111  
STOCK# H90794

Lease Date: 12/23/2008

**LESSEE (Print Name & Address):**
- TODD SCOTT PIERSON
- 10635 W LONE CACTUS
- PEORIA
- AZ 85382
- N/A

**CO-LESSEE:**
- N/A
- N/A
- N/A
- SOUTHWEST REGION
- N/A

**LESSOR (Dealer):**
- EARNHARDT AVONDALE, INC DBA EAR
- 10151 W PAPAGO FREEWAY
- AVONDALE
- AZ

Assignee: HONDA LEASE TRUST

**LEASE TERM: 36 MONTHS**

### VEHICLE DESCRIPTION

| New/Used | Year/Make/Model | Body Style | Vehicle Identification Number | Odometer Reading | Primary Use |
|---|---|---|---|---|---|
| NEW | 2009 HONDA ACCORD | 4DR | 1HGCP26409A068287 | 12 | ☐ Personal, Family, or Household ☐ Business, Commercial, Agricultural, or Lease to an organization or governmental entity |

Including Standard Manufacturer Installed Features (unless replaced by upgraded equipment) and the Following Dealer Installed Options:
- Air Conditioning ___ Leather Interior ___ Power Moonroof ___ Custom Wheels ___ Rear Wing Spoiler ___ Alarm System
- Audio System includes: ___ AM/FM Stereo ___ AM/FM Stereo with Cassette Player ___ Cassette Player ___ CD Changer ___ CD Player
- Other Dealer Installed Options: ___

### FEDERAL CONSUMER LEASING ACT DISCLOSURES

| AMOUNT DUE AT LEASE SIGNING (Itemized Below) | MONTHLY PAYMENTS/SINGLE PAYMENT | OTHER CHARGES (not part of my monthly payment) | TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease) |
|---|---|---|---|
| $ 1095.64 | My first monthly payment of $ 299.99 due on 12/23/2008 followed by 36 payments of $ 299.99 on the 22nd each month. The total of my monthly payments is $ 10799.64 / My single payment of $ N/A due on N/A / Total $ N/A | Disposition Fee (if I do not purchase the Vehicle) $ 0 / Total $ 0 | $ 11595.29 |

#### ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING

| Amount Due at Lease Signing | | How the Amount Due at Lease Signing will be Paid |
|---|---|---|
| Capitalized Cost Reduction (Amount Paid in Cash) | $ 26.64 | Credit for Net Trade-In Allowance |
| Sales/Use Tax on Amount Paid in Cash | + 2.34 | Year ___ Make ___ $ -0- |
| Capitalized Cost Reduction (Credit for Net Trade-In Allowance) | + -0- | Rebates: + N/A |
| Sales/Use Tax on Credit for Net Trade-In Allowance | + -0- | Noncash Credits: + N/A |
| Advance Monthly Payment (1st Month) | + 299.99 | Amount Paid By: + N/A |
| Advance Single Payment (if Single Payment Lease) | + N/A | Amount to be Paid in Cash: + 1095.64 |
| Refundable Security Deposit | + N/A | TOTAL = $ 1095.64 |
| Initial Title Fees LIC/AQF | + 392.67 | |
| Initial Registration Fees | + INC | |
| Other: N/A | + N/A | |
| Other: Doc Fee | + 369.00 | |
| Other: Tire Tax | + 5.00 | |
| TOTAL | = $ 1095.64 | |

#### MY MONTHLY PAYMENT/SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW

| | | |
|---|---|---|
| GROSS CAPITALIZED COST | $ 21225.61 | ☐ Please check this box for an itemization of Gross Capitalized Cost. The agreed upon value of the Vehicle ( $ 20630.61 ) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance). |
| CAPITALIZED COST REDUCTION | − 26.64 | The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the gross capitalized cost. |
| ADJUSTED CAPITALIZED COST | = 21198.97 | The amount used in calculating my base monthly or single payment. |
| RESIDUAL VALUE | − 14399.50 | The estimated value of the Vehicle at the scheduled end of the Lease Term used in calculating my base monthly or single payment. |
| DEPRECIATION AND ANY AMORTIZED AMOUNTS | = 6799.47 | The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. |
| RENT CHARGE | + 3126.81 | The amount charged in addition to the depreciation and any amortized amounts. |
| TOTAL OF BASE PAYMENTS | = 9926.28 | The depreciation and any amortized amounts plus the rent charge. |
| LEASE PAYMENTS | ÷ 36 | The number of payments required during the term of my Lease. |
| BASE MONTHLY/SINGLE PAYMENT | = 275.73 | |
| MONTHLY SALES/USE TAX | + 24.26 | |
| SALES/USE TAX (SINGLE PAYMENT) | + N/A | |
| OTHER | + N/A | |
| TOTAL MONTHLY/SINGLE PAYMENT | = $ 299.99 | |

**EARLY TERMINATION.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**EXCESSIVE WEAR AND USE.** I may be charged for excessive wear based on Lessor's standards for normal use and for mileage in excess of 12,000 miles per year at the rate of 15 cents per mile.

**PURCHASE OPTION AT END OF LEASE TERM.** I have an option to purchase the Vehicle AS-IS, WHERE-IS at the end of the Lease Term for $ 14399.50, plus any required taxes and fees.

**OTHER IMPORTANT TERMS.** Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

### PAYMENT SCHEDULE
I agree to make payments to Lessor according to the schedule shown above. The first payment is due on the Lease Date. The second payment is due no later than 34 days after the Lease Date and must be on or between the 1st and 28th of the month. If the total monthly payment includes sales or use tax, this payment amount may vary to the extent of any tax increase or decrease. I will not change or stop any Lease payments for any reason, even if the Vehicle is stolen, destroyed, seized by a governmental authority or experiences mechanical problems.

### LATE CHARGES / RETURNED CHECK CHARGE
I will pay a late charge equal to the lesser of $25 or 5% of the unpaid portion of any payment that is not received within 10 days after it is due, or such lesser amount as set by law. I will also pay a $20 charge for any check or similar instrument returned for any reason.

### VEHICLE WARRANTIES
If the Vehicle is new, it is covered by the Manufacturer's New Vehicle Warranty. If the Vehicle is new or used, it is not covered by any other warranty unless identified below:
- ___ Remainder of Manufacturer's New Vehicle Warranty.
- ___ Manufacturer's Used Vehicle Limited Warranty.
- ___ Manufacturer's Extended Warranty.
- ___ Other: ___

Lessor assigns to me all of its rights in the above specified warranties. LESSOR LEASES THE VEHICLE "AS-IS" AND MAKES NO WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE VEHICLE AND SPECIFICALLY DISCLAIMS ALL WARRANTIES IMPLIED BY LAW, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE ARE NOT DISCLAIMED IN THE STATES OF MASSACHUSETTS, MISSISSIPPI AND VERMONT.

### OPTIONAL SERVICE CONTRACT
An optional service contract promises to perform services or provide benefits relating to the maintenance or repair of the Vehicle. These coverages are not provided by the Lessor. I must pursue all matters regarding these coverages through the provider. The terms and conditions for these coverages are by a separate contract, which I have read and received.

Price: $ N/A  Provider: ___
Price: $ N/A  Provider: ___

If the price of any service contract is not included in the amount due at lease signing, the price will be included in the Gross Capitalized Cost and will be subject to rent charges.

### OTHER CHARGES
I understand that the "Other Charges" and "Total of Payments" boxes above do not reflect amounts collected on behalf of third parties (such as property taxes, fines, fees, etc.) or charges imposed if I fail to abide by or modify the terms of this Lease. I am responsible for these amounts and will refer to all other terms and conditions of this Lease for a description of all charges due.

### ESTIMATED FEES AND TAXES DURING LEASE TERM
I agree to pay when due or reimburse Lessor for all title/license/registration/official fees and taxes over the term of my Lease (including any extensions), whether paid at lease signing, included in my monthly payments or assessed otherwise. Lessor estimates this amount to be: $ 2059.71

The actual total of fees and taxes may be higher, or lower, depending upon whether the garaging address of the Vehicle changes, and on the tax rates in effect, or the value of the Vehicle at the time a fee or tax is assessed. Some taxes and fees may come due after the Lease terminates. I agree to pay any such amounts within 10 days of being invoiced. I will be responsible for any fines or penalties if I fail to pay the bill when due.

### VEHICLE INSURANCE
I will pay for and maintain during the Lease term, and until the Vehicle is returned to Lessor, insurance on the Vehicle which has the following minimum coverages: (1) Public Liability Insurance that either covers up to $100,000 for bodily injuries to any one person, $300,000 for bodily injuries for any one accident, and $50,000 for property damage, or has a combined single limit of $300,000 for bodily injuries and property damage for any one accident; and (2) Physical Damage Insurance covering loss or damage to the Vehicle, with deductibles of no more than $1,000 for collision and $1,000 for comprehensive fire and theft loss.

The Policy of Public Liability Insurance must show Assignee as an additional insured. The policy of Physical Damage Insurance must show Assignee as loss payee. I may choose to get the required coverages myself or through any person. The policies must be written by an insurance company acceptable to Lessor. I agree to provide written proof of Insurance to Lessor upon request, and authorize Lessor, and its agents, to contact my insurance agent or insurance company to verify coverage as required by this Lease. I further authorize Lessor to endorse my name(s) on any check or draft from my insurance company for any claim. Lessor may change the amounts of required insurance. I acknowledge that the limits required under this Lease may not be sufficient for my needs, and will see my insurance agent for more information. All insurance related information must be addressed to the Assignee, c/o PDP Services, P.O. Box 950201, Hunt Valley, Maryland 21065-0201.

STATE FARM  96408381403H

Broker/Stock: 623-566-6405

Policy Number: N/A

Agent Address: ___ City ___ State ___ Zip Code
Agent Telephone: ___

**NOTICES TO LESSEE(S):** (1) CAUTION — IT IS IMPORTANT THAT I THOROUGHLY READ THIS AGREEMENT BEFORE I SIGN IT. (2) I WILL NOT SIGN THIS AGREEMENT BEFORE I READ BOTH SIDES OF IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (3) I AM ENTITLED TO AN EXACT COPY OF THE LEASE I SIGN. I WILL KEEP IT TO PROTECT MY LEGAL RIGHTS. BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ BOTH SIDES AND RECEIVED A COMPLETED COPY OF THIS LEASE AGREEMENT.

LESSEE: _/s/_  BY: ___  TITLE: ___
LESSEE: ___  BY: ___  TITLE: ___

**GUARANTY:** I/We jointly and severally guaranty payment of all amounts under this Lease. This means that if the Lessee(s) fails to pay any money owed, I/We will pay it. Upon default under this Lease, Lessor may proceed immediately against the guarantor(s) without first proceeding against the Lessee(s), any other guarantor, or any security. I/We also agree to be liable for all fees, including attorneys' fees, that the Lessor incurs in enforcing this Lease or pursuing any/our guaranty. My/Our guaranty of payment is unconditional, and I/we agree that it will not be affected by any modification, extension, renewal or amendment of the Lease, or from any person or security. I/We waive all notices of every kind and nature and also waive all rights to demand and presentment.

Co-Signer/Guarantor Signature ___ Print Name ___  Co-Signer/Guarantor Signature ___ Print Name ___

Lessor accepts this Lease and assigns all right, title, and interest in the Lease and the Vehicle described herein, and Lessor's rights under any guaranty executed in connection with this Lease, to Assignee.

EARNHARDT AVONDALE, INC DBA ___

SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS

AMERICAN HONDA FINANCE CORPORATION

LS-AOS-191 1/07

## VEHICLE MAINTENANCE AND USE

**VEHICLE MAINTENANCE AND OPERATING COSTS:** I will maintain the Vehicle in good working order and condition and have all necessary repairs made, using genuine manufacturer's replacement parts. I will pay all expenses for Vehicle use and operation, including maintenance, repair, fluids, tires and other expenses. At my expense, I will have the Vehicle serviced in accordance with the manufacturer's minimum recommendations and as requested by the manufacturer in connection with any recall campaign. I will have the service validated, and be able to provide proof that such service has been performed. Lessor may inspect the Vehicle at any reasonable time.

**USE:** I will notify my insurance company and AHFC immediately of any damage to or loss of the Vehicle, and will cooperate following any such incident. I will not: (a) allow unlicensed drivers to operate the Vehicle; (b) use or allow the Vehicle to be used illegally, improperly, or to transport goods or people for pay; (c) use the Vehicle in a way that causes cancellation or suspension of insurance, or causes the manufacturer's warranty to become void; (d) use the Vehicle to pull trailers that exceed the manufacturer's trailer towing recommendations; (e) remove the Vehicle from the 48 contiguous United States without Lessor's written consent (unless the Vehicle was originally leased in Alaska or Hawaii); (f) change, mark or install equipment in the Vehicle without Lessor's written consent.

**REGISTRATION:** I will register the Vehicle, as required in the state where the Vehicle is garaged and pay for all license, title and registration costs. If I move or change the Vehicle's garaging address, I will notify AHFC immediately and pay for all resulting taxes and title, registration or other fees.

## ENDING MY LEASE

**PURCHASE OPTION PRIOR TO THE END OF LEASE TERM:** I have the option to purchase the Vehicle AS IS, WHERE IS at any time (unless a governmental agency has seized the Vehicle and instructed Lessor not to release the Vehicle to me). This purchase option may be exercised only by the Lessee. If I purchase the Vehicle prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (defined below), plus (i) any payments or other charges due and unpaid under this Lease (except excess mileage and excessive wear and use charges) and (ii) any taxes or fees required by law in connection with the purchase. The Adjusted Lease Balance is the unamortized portion of the Adjusted Capitalized Cost, determined on an Actuarial basis, where earnings are accrued on the first day of every period. Lessor will provide a written explanation of the Actuarial method used to determine the Adjusted Lease Balance upon request. I will re-register and re-title the Vehicle in my name at the time I purchase it. If I fail to do so, Lessor may cancel the registration.

**NOTICE:** If I exercise the Purchase Option under this Lease, I acknowledge that AHFC, on behalf of Assignee, does hereby transfer, set over and assign all of its rights (but not its obligations) to sell such Vehicle to Honda Finance Exchange, Inc. pursuant to the Sub-Servicing and Master Exchange Agreement between AHFC and Honda Finance Exchange, Inc. **Notice is hereby given that all of the rights (but not the obligations) to sell the Vehicle have been assigned to Honda Finance Exchange, Inc., pursuant to such Master Exchange Agreement.**

**EARLY TERMINATION LEASE LIABILITY:** If I am not in default, I may terminate this Lease early. If I decide to terminate this Lease early, I will return the Vehicle to Lessor on the due date of a monthly lease payment. I will owe Lessor (a) any monthly payments already due and unpaid and any other amounts owed arising from my failure to keep promises under this Lease; plus (b) any official fees and taxes imposed in connection with the termination; plus (c) the amount, if any, by which the then Adjusted Lease Balance (determined as described above) exceeds the Realized Value of the Vehicle (described in the section below). Lessor may terminate this Lease at any time if the Lease is in default, in which case, in addition to the foregoing amounts, I also agree to pay Lessor's costs of repossessing, storing and transporting the Vehicle as well as Lessor's costs of collection, including court costs and reasonable attorneys' fees, to the extent permitted by law.

**DETERMINATION OF REALIZED VALUE OF THE VEHICLE:** The Realized Value of the Vehicle upon early termination will be determined in one of the following ways: (a) by written agreement between Lessor and me, provided it is signed within 10 days after I return the Vehicle to Lessor; (b) by a professional appraisal of the wholesale value of the Vehicle, if I choose to obtain one at my sole expense within 10 days after returning the Vehicle to Lessor. The appraisal must be made by an independent third party who is acceptable to Lessor and to me; the appraised value will then be the Realized Value; or (c) if the Realized Value is not determined by (a) or (b) above within 10 days after I return the Vehicle to Lessor, Lessor will proceed to sell the Vehicle at wholesale in a commercially reasonable manner. The net sale price, less any fees and taxes imposed upon Vehicle disposition, will be the Realized Value.

**IF THIS IS A SINGLE PAYMENT LEASE:** The Advance Single Payment amount is calculated based on the fact that I pay all periodic payments due under this Lease at its inception, and on the assumption that it will go full term. If the Lease is terminated early, the Lease will be treated as one which calls for monthly payments, each in the amount of the Advance Single Payment divided by the number of months in the Lease Term. Then my early termination liability will be calculated in the manner set forth under "Early Termination Lease Liability".

**SCHEDULED END OF LEASE LIABILITY:** I agree that if I do not purchase the Vehicle at the end of the Lease, my payment liability at that time will be the sum of: (a) any monthly lease payments already due and unpaid and any other amounts arising from my failure to keep my promises under this Lease; plus (b) any Excessive Wear and Use amounts, defined below; plus (c) any excess mileage charges; plus (d) any official fees and taxes imposed in connection with Lease termination.

**EXCESSIVE WEAR AND USE/EXCESS MILEAGE:** If I do not purchase the Vehicle at the end of my scheduled Lease term, and subject to the limited waiver below, I will reimburse Lessor for the amount it would cost Lessor to repair excessive wear and use to the Vehicle, whether or not Lessor makes repairs. "Excessive Wear and Use" includes, but is not limited to: (a) any mechanical defect or failure; (b) broken or missing parts or accessories (including missing keys or remote entry devices); (c) damaged body, fenders, metal work, lights or trim, or damaged or broken glass; (d) paint which is chipped; (e) interior rips, stains, burns, or excessively worn areas; (f) missing or unsafe wheels or tires (including spare), tires with less than 1/8th inch of tread remaining at the shallowest point; (g) damage or any other condition that makes the Vehicle unsafe or unlawful to operate, or (h) safety and emission control equipment not in proper working order. I also agree to pay for excess mileage as stated on the other side under the paragraph entitled "Excessive Wear and Use".

**LIMITED EXCESSIVE WEAR AND USE WAIVER:** If I am in compliance with all terms and conditions of this Lease at the scheduled Lease end (including, without limitation, payment obligations and insurance requirements), Lessor agrees to waive Excessive Wear and Use Charges caused by one or more single events, each of which total less than $500 to repair, up to a maximum of $1500 waived. I remain responsible for the cost of any damage arising from any single event that would cost $500 or more to repair, and for Excessive Wear and Use Charges exceeding $1500. A "single event" is a single occurrence that results in damage to the Vehicle. A single occurrence may result in damage to multiple areas of the Vehicle (as in front and back, or both sides) but would be considered a single event for purposes of this Waiver.

**RETURN OF THE VEHICLE:** Whether the Lease is terminated early or as scheduled, I agree to return the Vehicle to the Dealer's address as shown on this Lease or to any address AHFC specifies. If I keep possession of the Vehicle past the Lease Term, I agree to continue Monthly Payments, but I understand that continued payment does not permit me to keep the Vehicle. I agree to pay for any damages that Lessor may suffer because I failed to return the Vehicle at Lease termination.

**ODOMETER DISCLOSURE STATEMENT:** On termination of this Lease (or upon election to purchase the Vehicle), I agree to provide a signed written disclosure to Lessor of the correct odometer mileage on the Vehicle, as required by federal law, and understand that the failure to do so may result in fines and/or imprisonment. I agree to pay Lessor for any loss, claims, damage, costs and expenses (including legal expenses) which result from my failure to promptly provide Lessor with a correct written odometer disclosure statement.

## DEFAULT OR LOSS OF THE VEHICLE

**DEFAULT:** I will be in default if: (a) I fail to make any payment when due under this Lease; (b) a bankruptcy petition is filed by or against me; (c) a proceeding in receivership is filed by or against me or my property, or I make an assignment for the benefit of creditors; (d) I fail to comply with the insurance requirements of this Lease; (e) I do not repair or maintain the Vehicle as the Lease requires; (f) the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use; (g) I fail to answer traffic summons or pay any traffic tickets or other fines when due; (h) the Vehicle becomes subject to a lien; (i) the Vehicle is seized or confiscated for any reason by a law enforcement agency; (j) I break any of my other agreements in the Lease and such breach significantly impairs the prospect of payment, performance, or realization of Lessor's interest in the Vehicle; or (k) I die. **Remedies:** In the event of default, Lessor may do any or all of the following without giving advance notice to me: (a) take any reasonable measures designed either to correct the default or to save Lessor from loss, in which case I will pay Lessor upon Lessor's request for the costs and expenses incurred; (b) terminate the Lease and my rights to possess and use the Vehicle; (c) take possession of the Vehicle by any method or manner permitted by law; (d) determine my termination liability on an early termination basis which I agree to pay immediately; (e) apply my security deposit to any amounts I owe; and (f) pursue any other remedy permitted by law. All of Lessor's rights are cumulative and the taking of any action will not prevent the taking of any other action. I also agree to pay Lessor for all collection and legal costs, including all reasonable attorneys' fees and court costs Lessor incurs, to the extent permitted by law.

**TOTAL LOSS PROTECTION:** Total Loss Protection limits the amount I will owe if the Vehicle is lost, stolen or destroyed. If the Vehicle is lost, stolen or destroyed and I have maintained the required insurance coverages and Lessor receives all insurance proceeds, Total Loss Protection will apply and I will only owe Lessor for: (i) past due monthly lease payments and other amounts incurred as of the date of the loss; (ii) the insurance deductible and any amounts deducted from the insurance settlement for other, prior damage, excessive wear, use and mileage; and (iii) applicable taxes and official fees. Lessor waives, **at no cost to me**, its right to collect any amount in excess of these amounts. I agree to consult with Lessor prior to accepting any actual cash value insurance settlement offered by my insurer and to provide Lessor with a copy of the insurer's settlement statement.

## ADDITIONAL INFORMATION

**OWNERSHIP:** This is a lease agreement. Lessor owns the Vehicle. I agree that this Lease is a true Lease for tax and other purposes and that Lessor will receive the benefits of ownership. Lessor has not given me any information or advice regarding any possible tax consequences or benefits under this Lease.

**REIMBURSEMENT AGREEMENT:** I understand and agree that I am responsible for promptly paying any fines incurred on the Vehicle, such as traffic or parking tickets, and that this liability is joint and several if this Lease is signed by more than one Lessee. I authorize Lessor to provide any information about me requested or required by a state parking or traffic authority in connection with any such parking or traffic ticket. If Lessor pays any repair bills, storage bills, taxes, fines, tickets or other charges on the Vehicle, I agree to repay the amount to Lessor immediately upon demand. If I do not pay, I will reimburse AHFC and pay a $20 administrative fee, or other amount as allowed by law, for every such fine, ticket, penalty, or other charge paid on my behalf.

**LESSEE'S REPRESENTATIONS:** I promise that I have given true and correct information in the application for credit, and have no knowledge that would make that information untrue in the future. Lessor has relied on the truth and accuracy of that information in entering into this Lease. I promise that I have given a true payoff amount on any Vehicle traded in. If that payoff is more than the amount shown in the Itemization of Amount Due at Lease Signing on the front of this Lease, I will pay Lessor the excess amount upon demand.

**NOTICES/NO WAIVER:** I agree to notify Lessor within 30 days of any change in my address. Unless I notify Lessor in writing of any change in my address, any notices Lessor sends me are sufficient if sent to my address as shown on this Lease. Lessor can waive or delay the enforcement of its rights as to any person signing this Lease without affecting its rights as to any other person signing this Lease. I also agree that Lessor can release any signer from his or her obligations without releasing any other signer from their obligations.

**SECURITY DEPOSIT:** A refundable security deposit may be part of the payment I make when I sign this Lease. At Lease termination, whether early or as scheduled, Lessor will deduct from the security deposit any amounts I owe under this Lease and do not pay. If I fully perform my obligations under this Lease, upon termination any part of the security deposit not credited will be refunded to me. In the event Lessor has not been billed for personal property taxes for the Vehicle for the year (or part thereof) in which the Lease terminates, I authorize Lessor to retain a portion of the security deposit estimated to cover any personal property tax allocation for such year and apply it to the tax when due. No interest, increase or profits will accrue or be paid to me on the security deposit.

**SECURITY INTEREST:** Further, I authorize AHFC, on my behalf, to settle or release any claim under the insurance related to Lessor's ownership of the Vehicle, to receive and endorse any checks or drafts representing premium rebates and/or proceeds of such insurance, and to apply such amounts to my obligations under this Lease. AHFC may make and receive claims for all proceeds paid or payable under any service contract purchased under this Lease for application to my obligations under this Lease. In the event I am in default under this Lease, AHFC may cancel any service contracts and receive any funds paid or payable as a rebate, refund, return or otherwise.

**ASSIGNMENT:** I agree not to transfer, sublease, rent, or assign this Lease, the Vehicle, or my right to use the Vehicle. This Lease will be assigned to the Assignee identified on the other side. AHFC will administer this Lease. I agree to make all payments and perform all other obligations under this Lease to AHFC. I acknowledge that AHFC (and Assignee, if different) will not have to make any repairs, maintain the Vehicle or perform any of Dealer's duties under this Lease. AHFC has the power to act on behalf of Assignee to administer, enforce and defend this Lease.

**CREDIT REPORTING:** I authorize AHFC and its affiliates, at any time, to reinvestigate any information provided on my credit application and to verify my current credit standing and, in the course of doing so, request and receive credit bureau reports. If I default under this Lease, I authorize AHFC and its affiliates to make any credit inquiries AHFC and its affiliates deem appropriate, and understand that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency. I authorize AHFC and its affiliates and others to exchange credit, account, and financial information about me at any time, except to the extent I have instructed you otherwise.

**MODIFICATIONS/GOVERNING LAW:** This Lease sets forth all of the agreements between Lessor and Lessee for the lease of the Vehicle, and no modification of this Lease shall be valid unless it is made in writing and signed by Lessor and Lessee. If any provision of this Lease is unenforceable or invalid, that provision shall be severed from the remainder of the Lease and the validity and enforceability of the remaining provisions shall not be affected or impaired. This Lease is to be governed by the laws of the state of Dealer's business.

**SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS**

LS A05-101 1/07

# ARIZONA CERTIFICATE OF TITLE



**Motor Vehicle Division**
ADOT

Inventory Control
13368764

| Vehicle Identification Number | Year | Make | Model | Body Style |
|---|---|---|---|---|
| 1HGCP26409A068267 | 2009 | HOND | ACCO | 4DSD |

| First Registered | List Price | Mobile Home Manufacturer | Unit Number |
|---|---|---|---|
| 01/2009 | 022555 | | |

HONDA LEASE TRUST
P O BOX 997509
SACRAMENTO CA 95899-7509

| Title Number | Issue Date | Film Number | Odometer Reading (no tenths) * |
|---|---|---|---|
| 900H009017007 | 01172009 | J017900H07 | 0000012  A |

| Previous Title Number | State | Issue Date | Previous Film Number | |
|---|---|---|---|---|
| MCO | | 00000000 | ORIGINAL | A - Actual Mileage<br>B - Mileage in excess of the odometer mechanical limits<br>C - NOT Actual Mileage, WARNING ODOMETER DISCREPANCY |

Arizona Brands

| Previous Brand | State Previous Brand | State Previous Brand | State Other States With Brands |
|---|---|---|---|

ADDITIONAL BRAND INFORMATION WILL BE PRINTED HERE IN THE FUTURE.

**Owners/Lessees**
TODD SCOTT PIERSON — LESSEE
HONDA LEASE TRUST — LESSOR

P O BOX 997509                SACRAMENTO          CA  958997509

**Lienholders**
FIRST LIEN-
HONDA LEASE TRUST           LIEN DATE:   12232008
P O BOX 997509                SACRAMENTO          CA  958997509

**LIEN RELEASE**

| Lienholder Name | | | Acknowledged before me this date | Notary Public Signature | | |
|---|---|---|---|---|---|---|
| Lien Amount | Lienholder Signature | | Date | County | State | Commission Expires |